UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Fernando Ornelas</u>

    v.                                          Civil No. 14-cv-394-LM
                                                Opinion No. 2017 DNH 104

<u>City of Manchester, et al</u>

## O R D E R

Fernando Ornelas brings suit against the City of Manchester, the Manchester Police Department, Hillsborough County, Elliot Hospital, the Hillsborough County of Department of Corrections, and several employees of those entities alleging claims arising out of serious injuries that he sustained while in their custody.[1] Elliot Hospital moves to dismiss Ornelas's medical injury claim against it, arguing that the claim is barred by New Hampshire's three-year statute of limitations on personal actions. Ornelas objects.

### Standard of Review

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable

---

[1] Ornelas has voluntarily dismissed his claims against Envision Healthcare, Inc., the Mental Health Center of Greater Manchester, Quentin Turnbull, Emily Yergeau, and David J. Mara. Doc. no. 93.

inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations and internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court "may grant a motion to dismiss based on a defendant's affirmative defense of a statute of limitations 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" DeGrandis v. Children's Hosp. Boston, 806 F.3d 13, 16-17 (1st Cir. 2015) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)).

## Background

I. Factual Background

On October 15, 2013, Ornelas was admitted to Elliot Hospital's emergency room to be evaluated for possible head trauma following a car accident. Ornelas, who had a known mental health condition, was disoriented. On his sister's request, mental health professionals evaluated Ornelas at the hospital. Those professionals diagnosed Ornelas with bipolar

2

disorder and, with his sister's consent, petitioned to have Ornelas involuntarily committed in a psychiatric hospital under state law.² According to the petition completed by medical personnel, Ornelas was "displaying paranoia, hallucinations and mood swings, as a result of mental illness, sufficient to pose a likelihood of danger to himself or others." Doc. no. 63 at ¶ 28.

While waiting for a bed to become available at the psychiatric hospital, Ornelas remained in the secured mental health section of Elliot Hospital's emergency room. While there, Ornelas had an altercation with Lawrence Bolduc, a hospital security guard. During that altercation, Ornelas suffered severe head and facial injuries.

Because Bolduc wanted to press charges, a call was placed to the Manchester Police Department. Officers from the department decided to take Ornelas to the police station and book him on charges for simple assault. Before being taken to the police station, however, the police officers requested that Elliot Hospital staff examine Ornelas to determine whether he was stable enough to be discharged.

---

² Two of the mental health professionals that examined Ornelas were Yergeau and Turnbull, both of whom worked for the Mental Health Center of Greater Manchester. As discussed above, Ornelas has voluntarily dismissed those defendants from this action.

An Elliot Hospital physician ordered a physical examination and diagnostic studies for Ornelas. Based on those tests, Elliot Hospital physicians determined that Ornelas had sustained significant injuries but was nevertheless stable enough to be discharged. The emergency room notes of the physician that examined Ornelas stated that he was complaining of facial pain, a headache, dental and jaw pain, and had a neck contusion. In Ornelas's discharge papers, Elliot Hospital staff members wrote that officers should "[r]eturn to emergency department as soon as possible if persistent vomiting, confusion, weakness to arms or legs or any other concerns." Doc. no. 63 at ¶ 53.

Ornelas was discharged into the Manchester Police Department's custody at around 10:45 p.m. on October 16, 2013. After being booked, Ornelas was then placed in the custody of the Hillsborough County Department of Corrections and was taken to the Valley Street Jail. At the jail, Ornelas acted confused and could be heard by guards hitting the cell door with his forehead and running back and forth in his cell. After unsuccessfully attempting to get Ornelas to calm down, officers decided to forcibly extract Ornelas from his cell.

Three officers entered Ornelas's cell and eventually restrained him. During the extraction, Ornelas was slammed to the concrete floor and hit his head on the toilet. Other inmates heard Ornelas screaming and heard "sounds consistent

with a person being struck." See doc. no. 63 at ¶ 142-44. Following the extraction, Ornelas's cell contained visible pools of blood on the floor.

After being removed from his cell, Ornelas was placed in a restraint chair. A nurse later noticed that Ornelas was unresponsive and determined that he needed emergency medical care. A staff member at the Valley Street Jail called an ambulance to return Ornelas to Elliot Hospital. Emergency personnel arrived at the Valley Street Jail at 9:10 a.m. on October 17 and returned Ornelas to the Elliot Hospital emergency room. Once at the hospital, physicians determined that Ornelas had severely fractured his cervical vertebrae and was paralyzed.

II. Procedural Background

Ornelas brought suit on September 11, 2014, alleging claims against several defendants, including claims for general negligence and negligent infliction of emotional distress against Elliot Hospital. Although Ornelas brought claims under RSA 507-E, New Hampshire's medical injury statute, against several defendants he did not bring such a claim against Elliot Hospital.[3]

---

[3] R.S.A. 507-E sets forth the procedures for bringing an "action for medical injury," which is defined as "any adverse, untoward or undesired consequences arising out of or sustained in the course of professional services rendered by a medical care provider." The definition of a claim for medical injury

5

In support of his negligence claim, Ornelas alleged that Elliot Hospital had failed to, among other things, provide Ornelas proper psychological evaluations, "examine properly and diagnose" Ornelas, and "properly evaluate and recommend the appropriate discharge instructions and follow-up with the patient." Doc. no. 1 at ¶ 324. Ornelas's original complaint did not contain any specific allegation of wrongdoing or negligence arising out of his second visit to Elliot Hospital. Rather, Ornelas alleged that he had already suffered the cervical fracture and was paralyzed when he returned to Elliot Hospital. Id. at 45 ("Mr. Ornelas is returned to Elliot Hospital paralyzed and unresponsive from Hillsborough County Department of Corrections."). Based on this theory, Ornelas alleged that he "suffered an injury sufficient to cause a fracture of his cervical spine" during either his first visit to Elliot Hospital, his booking at the Manchester Police Department, or his detention at Valley Street Jail. See id. at ¶¶ 208-09.

On January 26, 2017, Ornelas moved for leave to amend his complaint. In that motion, Ornelas asserted that during discovery he had obtained additional information demonstrating

---

includes claims resulting from the negligent provision of such services. Id.

6

that Ornelas was not paralyzed when he arrived at Elliot Hospital, the second time, but rather had become paralyzed there. Ornelas further asserted that based on that information, it was his position that he "suffered a cervical fracture which was unstable and which became progressively worse until the fracture caused complete paralysis." Doc. no. 62-1 at 10. Because no defendants objected, the court granted Ornelas's motion for leave to amend.

Ornelas's amended complaint, which was filed on February 10, 2017, contained new factual allegations about his care at Elliot Hospital after he was returned to the emergency room. Specifically, the amended complaint provided that:

> Upon arrival at the Elliot Hospital, Mr. Ornelas did not have a neck brace on and none was placed until after he was paralyzed. According to the hospital records, his GCS test showed he was not paralyzed upon his arrival at the hospital but did become paralyzed while at the hospital. Thereafter, it was confirmed that Mr. Ornelas had a severe cervical fracture that had gone undiagnosed and untreated by all persons responsible for his care.

Doc. no 63 at ¶ 200. In addition to that factual allegation, the amended complaint added a claim for medical injury under RSA 507-E against Elliot Hospital for providing negligent care during both of Ornelas's visits.

## Discussion

Elliot Hospital moves to dismiss Ornelas's medical injury claim, arguing that Ornelas brought that claim after New Hampshire's three-year statute of limitations expired. In response, Ornelas contends that his medical injury claim is based on recently-discovered evidence and thus is not barred by the statute of limitations. Ornelas further argues that the medical injury claim is permissible because it relates back to his original pleading.[4]

## I. Statute of Limitations

R.S.A. 508:4, I, the applicable statute of limitations, provides that "all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of." Here, there is no dispute that the acts causing Ornelas's injuries occurred at some point on or before October 17, 2013. Because Ornelas filed his amended complaint in February 2017, he did not bring his claim within the three years required under RSA 508:4, I.

---

[4] Ornelas also contends that Elliot Hospital waived any statute of limitations objections to his medical injury claim when it failed to object to his motion to amend his complaint. That theory, however, is incorrect. Carlos v. York Cty., No. 1:15-CV-01994, 2016 WL 1706163, at *2 (M.D. Pa. Apr. 27, 2016); Pessotti v. Eagle Mfg. Co., 774 F. Supp. 669, 677 (D. Mass. 1990), aff'd, 946 F.2d 974 (1st Cir. 1991).

Ornelas contends, however, that his medical injury claim is not time-barred based on either the discovery rule exception to the statute of limitations or the relation-back doctrine. In response, Elliot Hospital contends that neither the discovery rule nor the relation back doctrine applies here.

II. Discovery Rule

Under RSA 508:4, the limitations period is tolled until the plaintiff discovers, or reasonably should have discovered, the injury and its causal connection to the negligent or wrongful act. Lamprey v. Britton Const., Inc., 163 N.H. 252, 256-57 (2012). "[A] plaintiff need not be certain of this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule." Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 713 (2010).

In this case, Ornelas presumably knew that he had been treated in Elliot Hospital after being found unresponsive at the Valley Street Jail. This fact likely alerted Ornelas to the possibility that Elliot Hospital's medical care was a cause of his injuries. Nevertheless, the court need not determine whether the discovery rule applies, an issue which could turn on factual inquiries, because it concludes that Ornelas's claim for medical injury against Elliot Hospital relates back to his original pleading.

III. <u>Relation Back</u>

Under the relation-back doctrine, a plaintiff may avoid the preclusive effect of a statute of limitations if his complaint relates back to a prior, timely-filed complaint. See Turner v. United States, 699 F.3d 578, 585 (1st Cir. 2012); Connectu LLC v. Zuckerberg, 522 F.3d 82, 94 (1st Cir. 2008). Under Federal Rule of Civil Procedure 15(c), an amended complaint adding an additional claim relates back to the original complaint if either "(A) the law that provides the applicable statute of limitations allows relation back" or "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(A)-(B). The choice between these two provisions is "a one-way ratchet, meaning that a party is entitled to invoke the more permissive relation back rule." See Coons v. Indus. Knife Co., 620 F.3d 38, 42 (1st Cir. 2010) (analyzing relation back of an amendment adding new parties); Morel v. DaimlerChrysler AG, 565 F.3d 20, 26 (1st Cir. 2009).

Here, it is undisputed that Ornelas's original complaint was filed within the applicable statute of limitations. Ornelas contends that his medical injury claim relates back to that complaint under both New Hampshire and federal law.

A.  Federal Rule

Under the conduct, transaction, or occurrence test, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  Frederick v. State of New Hampshire, No. 14-CV-403-SM, 2016 WL 4382692, at *7 (D.N.H. Aug. 16, 2016) (quoting Mayle v. Felix, 545 U.S. 644 (2005)).  An amended complaint adding a new claim after the statute of limitations has expired will not relate back where the amendment "is so substantial that it cannot be said that [the] defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense."  O'Loughlin v. Nat'l R. Passenger Corp., 928 F.2d 24, 26 (1st Cir. 1991) (internal quotation marks omitted).

Accordingly, courts deny amendments "to assert a claim which was not even suggested in the original complaint."  Id.  If, however, the original complaint "gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged will relate back."  Id. (quoting 6A Wright, Miller & Kane, Federal Practice and Procedure, § 1497 (2 ed. 1990)).  "This analysis is directed to conduct rather than causes of action and new legal theories may relate back to the original filing where . . . there is a shared basis in factual

11

circumstances." Iconics, Inc. v. Massaro, No. 11-11526-DPW, 2016 WL 199407, at *5 (D. Mass. Jan. 15, 2016) (internal quotation marks and citations omitted).

Ornelas asserts that the medical injury claim relates back because his original complaint provided notice that he was asserting such a claim against Elliot Hospital. In response, Elliot Hospital contends that Ornelas's medical injury claim does not arise from the same conduct, transaction, or occurrence because it is premised on different facts—Ornelas's return to its emergency room—than those asserted in the original complaint.

1. Medical Injury Claims Arising Out of First Visit

Although Ornelas's medical injury claim does rely on new allegations concerning his return to Elliot Hospital, it also expressly references the treatment he received during his first visit. See doc. no. 63 at ¶ 346 ("With respect to Elliot Hospital, it was responsible for the negligent care provided by its servants, agents and/or employees including Ms. Yergeau and Dr. Turnbull under theories of actual and/or apparent agency.")(emphasis added). In his original complaint, Ornelas plainly alleged that Elliot Hospital's treatment during his first visit constituted medical negligence. For example, Ornelas alleged that Elliot Hospital failed to properly examine

12

and diagnose him, failed to provide appropriate psychological care, and failed to properly evaluate him before his discharge. Doc. no. 1 at ¶ 324. Therefore, regardless of whether Ornelas asserted a formal claim under RSA 507-E, his original complaint in substance set out or attempted to set out a transaction or occurrence based on Elliot Hospital's alleged negligent care.

In fact, Elliot Hospital has recognized from the outset of this litigation that Ornelas's claims against it included claims for medical injury. As Ornelas points out, Elliot Hospital's answer to the original complaint included an affirmative defense in which it asserted that the claims against Elliot Hospital could not proceed "before a N.H. Medical Malpractice Screening Panel hearing occurs, as Plaintiff's claims against Elliot Hospital include claims for 'medical injury.'" Doc. no. 48 at 44. Accordingly, Elliot Hospital cannot now be surprised that Ornelas has asserted a medical injury claim against it.

Therefore, to the extent Ornelas's medical injury claim is based on Elliot Hospital's treatment during his first visit, it relates back to the original complaint.

2. Medical Injury Claims Arising Out of Second Visit

Ornelas's amended complaint also asserts a medical injury claim based on new allegations that Elliot Hospital failed to properly stabilize his neck upon his return to its emergency

13

room.  Ornelas contends that these new allegations relate back because they fall within the general fact pattern alleged in his original pleading.  In response, Elliot Hospital argues that the allegations arise from a different occurrence because they rely on facts that differ in both time and type than those alleged in the original pleading.

In support, Elliot Hospital relies on Mayle v. Felix, 545 U.S. 644 (2005).  In Mayle, the plaintiff filed a petition for a writ of habeas corpus, alleging a Sixth Amendment claim based on the government's introduction of out-of-court testimony during his criminal trial.  Id. at 651.  After the relevant statute of limitations expired, the plaintiff amended his petition to allege a Fifth Amendment claim based on the government's introduction of statements that he made during a pretrial, police interrogation.  Id. at 651-52.  On appeal, the Supreme Court held that the amended petition did not relate back to the original petition because the new Fifth Amendment claim arose from a different occurrence or transaction.  Id. at 664.  In doing so, the court concluded that the plaintiff's new claim was not tied to a "common core of operative facts" because the essential predicate of that claim, the police interrogation, depended on facts that differed in type and time from those alleged in the original complaint.  Id. at 659-61, 664.

14

Elliot Hospital contends that Mayle bars relation back here because Ornelas has alleged different conduct as the cause of his paralysis. The court disagrees. As an initial matter, the First Circuit has suggested that Mayle sets forth a more stringent standard for relation back in habeas petitions. United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005) ("[I]n the habeas corpus context, the Rule 15 'relation back' provision is to be strictly construed, in light of 'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" (quoting Mayle, 545 U.S. at 657)); see also Turner, 699 F.3d at 585.[5] More importantly, however, Mayle itself does not hold that each distinct alleged act of wrongdoing underlying a claim is a separate transaction or occurrence for Rule 15 purposes.

That is evident from the Mayle court's conclusion that its decision does not conflict with Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 580-81 (1945). In Tiller, a railroad car struck and killed a railroad worker, whose wife sued on his behalf. Id. at 575. She initially alleged several negligent acts and, after the statute of limitations had expired, amended her complaint to allege a different theory of negligence based

---

[5] But see Anderson v. Bondex Int'l, Inc., 552 F. App'x 153, 157 (3d Cir. 2014) (concluding that "the Supreme Court's analysis in Mayle was consistent with—not more exacting than—its application of Rule 15(c) in other contexts").

15

on the railroad's failure to equip the locomotive with a rear light.  Id. at 575-77, 581.  The Tiller court held that the new claim related back to the original pleading, concluding that both claims "related to the same general conduct, transaction and occurrence which involved the death of the deceased."  Id. at 581.  The court further reasoned that "[t]here is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased."  Id.

   The Mayle Court explained that although the amended pleading in Tiller "invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted," it related back to the original pleading because there "was but one episode-in-suit, a worker's death attributed from the start to the railroad's failure to provide its employee with a reasonably safe place to work."  Mayle, 545 U.S. at 660.  The Mayle court further explained that unlike the plaintiff in its case, the plaintiff in Tiller "based her complaint on a single 'occurrence,' an accident resulting in her husband's death." Id.

   Based on similar reasoning, courts have concluded that new factual allegations raised in an amended complaint will relate back when they are closely tied to the general factual situation

16

alleged in the original complaint. See Anderson v. PAR Electrical Contractors, Inc., 318 F.R.D. 640, 644-45 (D. Kan. 2017) (finding relation back where new factual allegations bore "more than an 'incidental relationship'" and occurred nine days after events alleged in original complaint); Hernandez v. City of Chicago, No. 16 C 8875, 2016 WL 6948386, at *1 (N.D. Ill. Nov. 28, 2016) ("An amendment relates back if it 'alleges events close in time and subject matter to those previously alleged, and if they led to the same injury.'") (quoting In re Safeco Ins. Co. of Am., 585 F.3d 326, 331 (7th Cir. 2009)); Burnside v. Walters, No. 09-CV-2727-JDT-TMP, 2015 WL 5604186, at *4 (W.D. Tenn. Aug. 6, 2015) ("An amendment relates back if the new claims constitute added events leading up to the same injury or an added theory of liability for the same occurrence.") (internal quotation marks omitted), report and recommendation adopted, No. 09-2727-JDT-TMP, 2015 WL 5604214 (W.D. Tenn. Sept. 23, 2015); Vigilant Ins. Co. v. Servco Oil, Inc., No. 3:09-CV-829 (JCH), 2010 WL 2710479, at *4 (D. Conn. July 7, 2010) (finding relation back because like Tiller, plaintiff "only altered its underlying theory of how [defendant's] negligence caused the oil leak on the Serinos' property.").

In this case, the occurrence at issue is the fracture of Ornelas's neck, the resulting paralysis, and the events that led

17

to those conditions. In his original complaint, Ornelas alleged that Elliot Hospital's negligence, including its negligent provision of medical care, was in part responsible for his injuries. Just as in Tiller, Ornelas now alleges other conduct as an alternative cause of his injuries.

Those allegations relates back to the original complaint because they are tied to the common core of operative facts alleged therein. The new allegations concern the same injuries and involve the same type of conduct by Elliot Hospital—the negligent provision of medical care—that was alleged in the original complaint. Moreover, the new allegations share a close temporal proximity to the facts originally alleged. Ornelas's return to Elliot Hospital occurred within 24 hours of his initial discharge from that institution and nearly contemporaneously with the other allegations of misconduct alleged in the original complaint. Given these facts and that the original complaint gave notice that Ornelas was returned to and treated in its emergency room, Elliot Hospital cannot now claim that it was unaware of the general fact situation from which these new allegations arise.

Accordingly, the RSA 507-E claims alleged against Elliot Hospital relate back to the original pleading in this action.

B. New Hampshire Rule

Because the court concludes that the medical injury claim relates back under the federal test it need not assess whether it relates back under New Hampshire's standard.

Conclusion

For the foregoing reasons, Elliot Hospital's motion to dismiss (doc. no. 70) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

June 5, 2017

cc: All counsel of record.